DAVID A. BOLM et al., Appellants, v. TRIUMPH CORPORATION et al., Respondents.

Fourth Department, February 23, 1973.

*McDonough, Boasberg, McDonough & Beltz* (*Paul W. Beltz* of counsel), for appellants.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*R. William Larson* of counsel), for respondents.

GOLDMAN, P. J. In this appeal from an order of Special Term which granted defendants-respondents' motion for summary judgment and dismissed plaintiffs-appellants' complaint with prejudice, the issue is the liability of respondents for a claimed design defect in the manufacture of a motorcycle. The facts are not in controversy.

Appellant David A. Bolm was operating his 1966 Triumph motorcycle, which was manufactured by respondent Birmingham Small Arms, Ltd. and distributed by respondent the Triumph Corporation, when an automobile driven in the opposite direction made a left turn across the appellant's lane of traffic

causing the two vehicles to collide. The front of appellant's motorcycle struck the right front center of the automobile between the headlights. The force of the collision was such as to demolish completely the motorcycle and to project the appellant forward and over the automobile causing him to land on the street some five or six feet from the left rear wheel of the automobile, resulting in serious injury to the appellant driver.

The complaint in the instant case sets up causes of action sounding in common-law negligence, breach of warranty and "strict liability in tort". The negligence charged is that respondents carelessly designed, manufactured and assembled the appellant's motorcycle in such a way that there was a luggage rack placed in a dangerous and precarious position on the motorcycle which created an unreasonable risk of injury in the event of accident. This luggage rack or "parcel grid", which was standard equipment on the motorcycle operated by the appellant, was affixed to the gas tank in front of the motorcycle's saddle. The top of the parcel grid was approximately three inches higher than the top of the saddle, and the grid was 2¾ inches in front of the saddle. Immediately after the initial impact projecting him forward, appellant came into contact with this parcel grid causing him to suffer severe pelvic and genital injuries, resulting in claimed sterility, among other injuries. Appellants' complaint does not allege that the respondents' defectively designed machine caused the collision. Instead, the gravamen of the complaint is that respondents' placement of the parcel grid in this position aggravated, enhanced and contributed to the appellant driver's injuries.

Initially, it should be noted that the question of a manufacturer's duty in the design of an automobile or of any chattel is a question of law for the court (*Larsen* v. *General Motors Corp.*, 391 F. 2d 495; *Evans* v. *General Motors Corp.*, 359 F. 2d 822, cert. den. 385 U. S. 836; *Schemel* v. *General Motors Corp.*, 261 F. Supp. 134, affd. 384 F. 2d 802). The leading New York case on the manufacturer's duty in the design of a chattel is *Campo* v. *Scofield* (301 N. Y. 468). In *Campo*, the plaintiff was severely injured when his hands were caught in the revolving steel rollers of an onion topping machine manufactured by the defendants. The allegations of negligence as against the defendants were that they failed to supply the machine with guards which would have prevented the plaintiff from coming into contact with the rollers or with an emergency stopping device which might have lessened his injuries. An unanimous

Court of Appeals held (p. 472) that the duty of a manufacturer of a machine is "to make the machine function properly for the purpose for which it is designed", not to make it "accident proof or foolproof". At page 472 Judge FULD stated: "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. * * * he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. To illustrate, the manufacturer who makes, properly and free of defects, an axe or a buzz saw or an airplane with an exposed propeller, is not to be held liable if one using the axe or the buzz saw is cut by it, or if some one working around the airplane comes in contact with the propeller. In such cases, the manufacturer has the right to expect that such persons will do everything necessary to avoid such contact, for the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered. In other words, the manufacturer is under no duty to render a machine or other article 'more' safe — as long as the danger to be avoided is obvious and patent to all ".

An examination of *Campo* reveals that the complaint charged defendants with nonfeasance, for the failure of the manufacturer to supply protective devices. The court concluded that such nonfeasance did not give the plaintiff a cause of action in negligence as long as the dangerous nature of the article was patent and readily apparent. The thrust of the complaint in the instant case is immediately distinguishable from the complaint in *Campo* because it affirmatively alleges that the respondents were guilty of misfeasance in the design of their vehicle. That is to say, the respondents increased the likelihood of appellant sustaining an injury by installing a parcel grid in the front of the saddle of the motorcycle. Furthermore, the instant action cannot be dismissed simply because the presence of the "parcel grid" was patent. "A duty is owed, a liability imposed, *only if* the defect or danger be not 'known' or 'patent' or discoverable 'by a reasonable inspection'" (*Inman* v. *Binghamton Housing Auth.*, 3 N Y 2d 137, 145). (See *Lusardi* v. *Regency Joint Venture*, 35 A D 2d 264.) Therefore, although the presence of the luggage rack was patent, the danger from such a design was not. Unlike an onion topping machine, an axe, a buzz saw, or some other ostensibly

dangerous chattel, a motorcycle equipped with a luggage rack in front of the saddle is not patently dangerous. That the rack was visible to one looking at the cycle is obvious, but the fact that in the event of an accident it was a danger and peril to one riding the cycle was certainly not apparent. In this respect it was truly a latent defect.

There is a line of cases which adopts the *Campo* rationale and extends it to automotive design defects. These decisions hold that the manufacturer's "negligent design of an automobile is not actionable, where the alleged defective design is not a causative factor in the accident" (*Larsen* v. *General Motors Corp.*, 391 F. 2d 495, 498, *supra*). In reaching this conclusion, a number of cases have relied on the phrase "for the purpose for which it is designed" from *Campo* (p. 472), and have found that "the intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur" (*Evans* v. *General Motors Corp.*, 359 F. 2d 822, 825).

In *Evans*, the plaintiff claimed that General Motors was negligent in designing its 1961 Chevrolet with an "X" frame, rather than with a perimeter frame which plaintiff contended gave greater protection against side impact collisions. A divided Seventh Circuit Court, relying heavily on the *Campo* holding, affirmed the dismissal of the complaint. The majority opinion stated (p. 824): "A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Campo v. Scofield [citations omitted]. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield". In a vigorous dissent (p. 827), Circuit Judge KILEY stated that the manufacturer has a duty "to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accidents which are expected and foreseeable yet unavoidable by the purchaser despite careful use".

The holding of *Evans* has been criticized by several commentators, who contend that it employs an unreasonably restrictive intended use standard. One observer has noted that: "collisions are one of the frequent and inevitable contingencies of normal automobile use, and the responsibility of the manufacturer ought to extend at least to injuries caused by his auto-

mobile when such foreseeable emergencies occur. There seems to be no rational basis for splitting the event of the collision and allowing recovery only where the condition of the automobile caused the accident; the accident and injury are all part of the same happening in which defendant's failure to use reasonable care caused harm," (80 Harv. L. Rev. 688–689).

The California Court of Appeals stated its evaluation of *Evans* succinctly in *Badorek* v. *General Motors Corp.* (90 Cal. Rptr. 305, 316) : " The rationale of Evans is difficult to follow: to manufacture an automobile which is accident proof is an obvious impossibility—to say so is to express a truism. To adopt that truism as the basis for a rule that, therefore, under the law of negligence, there is no duty to exercise care to design a ' safer ' automobile is a non sequitur. It confuses crash-proof with crash-worthiness."

In *Larsen* v. *General Motors Corp.* (*supra*), a head-on collision, with the impact occurring on the left front corner of the Corvair driven by the plaintiff, caused a severe rearward thrust of the steering mechanism into the plaintiff's head. The plaintiff did not contend that the design defect caused the accident but that because of the design defect he received injuries he would not otherwise have received or, in the alternative, that his injuries would not have been as severe. The same claim is made in the case at bar.

In reversing the trial court, which rendered summary judgment in favor of General Motors, Eighth Circuit Judge GIBSON, in an opinion in which Circuit Judges BLACKMUN and HEANEY concurred, stated (391 F. 2d 495, 502) : " Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called ' second collision ' of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unrea-

sonable risk of injury, general negligence principles should be applicable.[3] The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.''

The Eighth Circuit also noted that (p. 503): '' The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many common-sense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.''

In *Edgar* v. *Nachman* (37 A D 2d 86, mot. for lv. to app. den. 29 N Y 2d 483), the *Campo* rationale was extended for the first time in New York to preclude a plaintiff from recovering against an automobile manufacturer for alleged design defects which did not cause the accident but did aggravate plaintiff's injuries. In *Edgar,* plaintiff's decedent was involved in an accident when his westbound Volkswagen was struck head-on by an eastbound vehicle operated by the defendant Nachman, which crossed over the center line of the highway. In a separate cause of action against the Volkswagen defendants, it was alleged that after the collision, '' decedent's 1963 Volkswagen automobile burst into flame allegedly causing or contributing to his severe personal injuries and death '' (p 87). Special Term granted a motion to dismiss pursuant to CPLR 3211 (subd. [a], par. 7), and the Appellate Division affirmed. In his opinion for an unanimous Third Department, Justice SIMONS alluded to both the *Larsen* and *Evans* cases, but then noted that '' no decisions in this State are called to our attention which allow recovery against the manufacturer for unsafe design characteristics which do not cause the accident but only aggravate the damages '' (*Edgar, supra,* p. 88). Justice SIMONS then went on to say (p. 88) that the New York rule is stated in *Campo* v. *Scofield,* and that: '' Liability may not be imposed

---

'' 3. As aptly and concisely phrased by Noel, 'Manufacturer's Negligence of Design or Directions for Use of a Product' 71 Yale L. J. 816, 818 (1962): 'The manufacturer does not have to make a product which is '' accident-proof '' or '' fool-proof ''. Liability is imposed only when an unreasonable danger is created. Whether or not this has occurred should be determined by general negligence principles, which involve ' a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precautions which would be effective to avoid the harm.' ''

on a manufacturer solely because his product is dangerous to use and he has failed to make safety provision against all anticipated risks. If the manufacturer does everything necessary to make the product function properly for its intended purpose, and its operation creates no danger unknown to the user, then the manufacturer is not liable. He is not required to make a machine that is accident proof or a car that is crashworthy.''

If one accepts the proposition that an automotive manufacturer should foresee that a number of the vehicles it produces will be involved in accidents through no fault of the operators of its vehicles, then both *Evans* and *Edgar* can be distinguished from the case at bar. The plaintiffs in those cases would have required the manufacturer to take affirmative steps in redesigning essential parts of its vehicle in order to lessen the severity of the impact of the collision — in short, to render its vehicle more safe. That is, an automobile frame and a gas tank are both necessary and essential parts of an automobile and must be included before the vehicle becomes operable. Such is not the case in the instant action. Even if one adheres to the *Campo* rationale, this case involves an allegation of misfeasance rather than nonfeasance. The plaintiff in our case is not obligating the manufacturer to provide him with greater protection against impact, but is requiring the manufacturer to refrain from including decorative and nonessential items which will increase his injuries if he is involved in a collision. It does not take a great deal of engineering expertise to determine that the rider of a moving motorcycle will be projected forward when he collides with an object coming in the opposite direction. Similarly, an intricate knowledge of physics is not required to discern that the rider may slide forward from the saddle of the motorcycle before he becomes airborne. By situating the luggage rack in this position, the respondents rendered appellant's vehicle more unsafe than such a vehicle would or should ordinarily be.

The question of whether respondents' luggage rack created an unreasonable risk of injury is a question of fact for the jury to decide by applying traditional negligence principles. As was noted earlier, the appellants' complaint also contains causes of action in breach of warranty and '' strict liability in tort ''. As far as breach of warranty is concerned, section 2–314 (subd. [2], par. [c]) of the Uniform Commercial Code describes products as merchantable if they '' are fit for the ordinary purposes for which such goods are used ''. This

raises the intended use problem encountered above in the negligence cause of action. This is sufficient without adopting the "strict liability in tort" doctrine, desirable as that may be.

In response to the respondents' argument that appellants' complaint fails to allege specifically that the luggage rack was a "latent" defect or danger, we are mindful of two factors: (1) CPLR 3026 provides that the pleadings are to be liberally construed; and (2) since this is a motion for summary judgment, the pleadings must be construed in a light most favorable to the nonmoving party. That being the case, appellants' omission of the word "latent" from his complaint is not a fatal defect. It would be a delaying and useless procedure to remand this case to Special Term and permit the appellants to add the word "latent" to their complaint. Although it would make a more "tidy" pleading, its absence should "be ignored" under the liberal construction principle of the CPLR.

The order should be reversed with costs and the motion denied.

DEL VECCHIO, J. (dissenting). We would affirm the order of dismissal, not for the reason stated at Special Term, but because there can be no liability on the manufacturer and distributor for a hazard which was as apparent to the plaintiff operator as it was to them (*Burnstein* v. *Haas*, 272 App. Div. 1051). We cannot agree with the majority's conclusion that, although the location of the luggage rack was obvious, the danger to the rider was not apparent. In *Campo* v. *Scofield* (276 App. Div. 413, 417, affd. 301 N. Y. 468) the court stated: "If such failure [there, to supply guards; here, the positioning of the rack] constituted a defect which created a danger to one using the machine, then both the defect and the danger must have been obvious and patent and known to the plaintiff. The complaint did not allege otherwise." As the majority recognize, "It does not take a great deal of engineering expertise to determine that the rider of a moving motorcycle will be projected forward when he collides with an object coming in the opposite direction."

The rationale of the cases which permit recovery for aggravation of damages caused by defective design, as set forth in *Larsen* v. *General Motors Corp.* (391 F. 2d 495), is persuasive and we would have no difficulty in permitting a recovery for second collision damages when a latent defect in design creates foreseeable risk of harm. However, in the instant case the complaint as amplified and restricted by the bill of particulars makes no mention of a latent or hidden defect or con-

cealed danger, and the location of the luggage rack cannot constitute such a latent defect or concealed danger. Plaintiff, who had prior experience with the mechanism of cycles, purchased this motorcycle from a private individual about one year before the accident. The luggage rack was optional equipment, not an item essential to the functioning of the machine, readily removable by him, and could be placed either in the front or in the rear of the motorcycle. Since in our view, the alleged defect was open, patent, and known to plaintiff, and no reasonable hidden risk was imposed upon him, we would not construe the complaint so broadly nor grant leave to amend (see *Sarnoff* v. *Charles Schad, Inc.*, 22 N Y 2d 180, 186; *Inman* v. *Binghamton Housing Auth.*, 3 N Y 2d 137, 145).

The order should be affirmed on the law.

MOULE and HENRY, JJ., concur with GOLDMAN, P. J.; DEL VECCHIO, J., dissents and votes to affirm the order in an opinion in which WITMER, J., concurs.

Order reversed with costs and motion denied.