Hector SERRANO, an infant over the age of 14 years by his father and natural guardian, Eugenio Serrano and Eugenio Serrano, Plaintiffs,

v.

HARRIS–INTERTYPE CORPORATION, Defendant and Third-Party Plaintiff,

v.

PEARL PRINTING CO., INC., Third-Party Defendant.

No. 73 Civ. 514.

United States District Court, E. D. New York.

March 18, 1975.

Delukey & Shapiro, Brooklyn, N. Y., for plaintiffs.

D'Amato, Costello & Shea, New York City, for defendant and third-party plaintiff.

Edward L. Milde, New York City, for third-party defendant.

PLATT, District Judge.

Defendant has moved for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the parties have submitted an agreed statement of facts which have been stipulated "solely for the purposes of the pending motion", which are as follows:

"1. The infant plaintiff, HECTOR SERRANO, was born on July 27, 1953.

"2. The infant plaintiff was employed by PEARL PRINTING CO., INC. in late March or early April, 1970 as a member of the press crew to work on a Cottrell Model V–15A printing press manufactured by the Cottrell Division of HARRIS INTERTYPE CORPORATION.

"3. On May 27, 1970, the infant plaintiff sustained personal injuries when his hand got caught in that portion of the machine where the roll of printed paper was cut and folded. The portion of the machine referred to as the cutter and the folder is shown in the attached photograph marked Exhibit 'I'.

"4. The rear portion of the cutter and folder is shown in photograph marked Exhibit 'II'.

"5. The plaintiff put his right hand over the 'motor' as designated in Exhibit 'II' into the machine in between the clockwise rotating cylinder, designated 'CY' in Exhibit 'II' and the counterclockwise rotating cylinder designated 'X' in the Exhibit 'II'. A close up of the aforementioned picture with the aforementioned designations is shown in the photo marked Exhibit 'III'.

"6. The photo marked Exhibit 'IV' shows the cutter and folder and the control panel designated 'C' from which the foreman of the press control the operation of the press.

"7. The photo marked 'V' is a front view of the control panel as designated by the 'C'.

"8. The photo marked Exhibit 'VI' represent the control panel and the manner in which the foreman would operate same.

"9. The press was purchased new by Pearl from the defendant in February of 1970 and installed about two months prior to the accident.

"10. The infant plaintiff had no technical training prior to the accident.

"11. The infant plaintiff had started working on the date of the accident about 6 A.M. The accident occurred about 7:30 P.M.

"12. The infant plaintiff was not visible to the operator of the control panel.

"13. That the testimony of John Zwillinski (pp. 57–78) sets forth substantially the manner of the occurrence with the exception of the fact that the infant plaintiff disputes that he advised Zwilinski he was all clear."

In his examination before trial Mr. Zwilinski testified in pertinent part in addition that (i) the machine had jammed up; (ii) he stopped the machine; (iii) he dug the paper out of the machine so that it was clear and free again to operate; (iv) he directed the plaintiff to "take the web and tuck her in" which meant that the plaintiff had to take the sheet in the back which as a result of the jam up would be hanging down and put it underneath the rollers; (v) "he [plaintiff] was in back of the press handing me the sheet through the two cylinders where I was standing in front of the folder * * * to grab it with my fingers * * * then I would jog the press around so that she would come up to the point where she would hold on to the pin"; (vi) he could not actually see the plaintiff tuck the sheet in through the two cylinders but he could see the results of his operation by the paper coming through underneath the roller and he grabbed it; (vii) then I jogged the press so that I could get more paper into my hand * * * enough for the pins to grab it"; and (viii) then he "started the press".

When the press was started, plaintiff's right hand was caught by the pins and the rotating drums of the folder and he sustained a subtotal amputation of his right hand. According to Mr. Zwilinski this was the only way to clear and re-start the machine after a jam-up and the procedure which was followed in this case was always the same operation as had been used in the past and as is still used to the present day.

Plaintiffs have submitted a memorandum of a professional engineer, S.S. Aidlin, of A–I–D Labs., Inc., who, if called, would presumably testify, inter alia, substantially as follows:

(i) "In feeding paper into the machine, it has to be jogged, that is, inched along. Because of the remote location of the control panel, Serrano had no means of controlling the jogging operation, which was actually performed by John."

(ii) "In addition to the above, Serrano had no protection inasmuch as there were no safeties to prevent his hand from being caught by pins on the rotating drum of the folder.
* * *

(iii) "The New York Department Board of Standards and Appeals, Industrial Code Rule # 19 applies to Guarding of Dangerous Machinery, etc. Page 22 of the Code refers to cutters and creasers and indicates that these shall be so guarded as to prevent the operator's hands being caught between the cylinder and the bed.

(iv) "It is also a requirement from the standpoint of good custom and practice that the man doing the work, such as feeding paper to the rolls, have full control of the jogging operation so that he can start and stop the machine as he wishes.

(v) "In addition, the U.S. Department of Labor, Bureau of Labor Standards, has published Bulletin # 197 entitled, 'The principles and Techniques of Mechanical Guarding'. Page 26 thereof, applies to types of guards that may be used for paper roll winders of the general type used in the machine that I inspected.

(vi) "In view of lack of proper guarding, and the lack of controls at the work station where the paper has to be fed through, this machine presents a distinct hazard to life and limb."

The first claim in plaintiffs' amended complaint alleges negligence on the part of the defendant, and the second claim alleges breach of implied warranty in that defendant "failed to install proper safety guards and/or safety devices in

said machine and in causing, allowing and permitting the control panel of the machine to be placed in a remote location so that a person feeding paper into the machine had no means of controlling the same * * * [and] that the defendant placed upon the market said machine knowing it was to be used in the State of New York, knowing the construction of said machine violated the laws of the State of New York." Damages are claimed by the plaintiff and his father in the sum aggregating $1,100,000.

■ The amended complaint alleges that jurisdiction is based upon diversity of citizenship and hence under Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the law of New York applies.

The most recent authoritative case on the question in New York apparently is Bolm v. Triumph Corp., 33 N.Y.2d 151, 156, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973) affirming 41 A.D.2d 54, 341 N.Y.S.2d 846 (4th Dept.1973). In that case the plaintiff was operating a 1956 Triumph motorcycle which had been distributed by the defendant. A car coming from the opposite direction made a left hand turn in front of the plaintiff and his motorcycle struck the right front center of the automobile between the headlights. As the result of the collision he came in contact with a luggage rack on the motorcycle causing him to sustain serious injuries as he was propelled from the motorcycle up and over the automobile to a landing on the street on the opposite side thereof. The luggage rack, which was standard equipment on the motorcycle, was affixed to the gas tank in front of the motorcycle's saddle. Plaintiff alleged that defendant carelessly designed, manufactured and assembled the motorcycle in that the luggage rack was placed in a dangerous position on the motorcycle which created an unreasonable risk of injury in the event of an accident.

Notwithstanding the fact that the location of the luggage rack was obvious to the plaintiff and hence "patent" in what might be deemed the ordinary sense, the Court of Appeals held that the questions of whether (i) there was a design defect and (ii) if there was, whether the dangers therefrom were latent or patent were questions for the jury to determine stating that:

"Here the duty and, thus, the liability of the manufacturer turned upon the perception of the reasonable user of the motorcycle as to dangers which inhere in the placement of the parcel (luggage rack) on top of the gas tank. That is a question of fact which should be submitted, with other issues, for jury consideration."

Defendant and third-party defendant argue that the "Campo" case line of cases (viz: Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Tatik v. Miehle-Goss-Dexter, Inc., 28 A.D.2d 1111, 284 N.Y.S.2d 597 (1st Dept., 1967), aff'd 23 N.Y.2d 828, 297 N.Y.S.2d 586; Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 805 (1957); Messina v. Clark Equipment Co., 2 Cir., 263 F.2d 291 (1959)), although older than the Bolm case, are controlling, and that they hold that in the absence of evidence of a hidden defect or a concealed danger, there can be no recovery.

The Campo case, supra, is unquestionably similar in some respects. The alleged negligence of the defendant in that case was its failure to install safety guards and an accessible stop switch in an onion topping machine which might have prevented an injury to the plaintiff operator's hand there. However, in that case the machine was in operation when the plaintiff fed a load of onions into the same and his hands were injured. He was not, as here, compelled to effect the re-start of the machine by placing his hands in a position of danger, viz, the re-start of the machine by an unseen and inaccessible button and a hidden person who also could not see him or his hands. Unlike the situation in Campo, such danger was not subject to plain-

tiff's control and hence might not be within the perception of the reasonable user.

The situation in the case at bar is more analogous to, and perhaps presents an *a fortiori* case when compared to, Belle v. Printers Machinery Maintenance, Inc., 39 A.D.2d 759, 332 N.Y.S.2d 470 (2d Dept., 1972). In that case the plaintiff, having stopped a printing machine and undertaken to repair the same with a hand in the working part of the machine, inadvertently hit the re-start button with his knee and damaged his hand. In reversing the judgment of the Court below dismissing the complaint at the end of the case on the basis of the *Campo* decision, the Appellate Division held (at p. 759, 332 N.Y.S.2d at p. 471):

> "In our view the evidence raised a question of fact as to whether the design of the machine was defective and whether the defect was latent or patent. Accordingly, it was error to dismiss the complaint. We do not take a position as to whether the alleged defect was latent or patent, but merely conclude that the evidence was sufficient to raise an issue for the jury to determine."

It is obvious from *Bolm* that although the design defect (i. e., the location of the luggage rack) was "open, patent and known to plaintiff" (41 A.D. 2d at p. 62, 341 N.Y.S.2d at p. 854), the Court held that the question whether there was a design defect and, if there was, whether the danger therefrom was latent or patent were questions for the jury. Similarly in the case at bar, although the absence of a safety guard and/or a control button which would prevent the re-start of the machine until the feeder was ready therefor may have been "open, patent and known to the plaintiff," the issue as to the latency or patency of the dangers from the design defect—if the jury determines that there was a design defect—presents a question of fact which should be resolved by a jury. Again as stated in *Bolm* "the duty and, thus the liability of the manufacturer turn upon the perception of the reasonable user of the [machine] as to the dangers which inhere" (33 N.Y.2d at p. 160, 350 N.Y.S.2d at p. 651, 305 N.E.2d at p. 774) in the process of feeding the machine in the manner indicated without the presence of a safety guard or the availability to the feeder of a control button preventing the restart of a machine until the plaintiff was ready therefor. This again, according to the Court of Appeals, appears to be a question of fact which should be submitted, with the other issues, for jury consideration.

In view of the foregoing, it would appear to this Court that either the *Campo* line of cases are distinguishable on the above indicated ground or they have been modified by the most recent *Bolm* decision. In either event, it would appear that as the law stands now the issues in the case at bar would have to be submitted to a jury. This, of course, would also include the issue of contributory negligence and the extent to which it may (if at all) restrict plaintiffs' recovery herein. See Dole v. Dow, 30 N.Y. 2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972).

For the foregoing reasons defendant's motion for summary judgment is denied without prejudice however to its right at the trial to make its normal motions at the end of the plaintiffs' case and at the conclusion of the entire case based upon the facts adduced at the trial and any further clarification or modification of the law of New York which may be extant and presented at that time.

So ordered.