297 So.2d 40 (1974)
Mary Jo EVANCHO, Appellant,
v.
Paul Gerhardt THIEL et al., Appellees.
No. 73-764.
District Court of Appeal of Florida, Third District.
June 26, 1974.
*41 Horton & Perse and Arnold R. Ginsberg, Sams, Anderson, Alper & Post, Miami, for appellant.
Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for Thiel.
Adams, George, Wood, Schulte & Thompson, Miami, for Weed.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, Miami, for Ford Motor Co.
Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, for Hertz Corp.
Before BARKDULL, C.J., and PEARSON and CARROLL, JJ.
PEARSON, Judge.
The plaintiff, who is the appellant here, alleged in her complaint that she was injured by reason of a design or manufacturing defect in a car produced and sold by the appellee, Ford Motor Co. The complaint did not allege that the defect was the cause of the automobile collision in which the appellant was injured. A question of law was thus presented as to whether the duty of a motor car manufacturing company to produce a reasonably safe vehicle extends to defects which cause injury during or as a result of a collision. The trial court held that the complaint did not state a cause of action against the appellee, Ford Motor Company, and dismissed it with prejudice as to the appellee. This appeal is from that order. We reverse.
The facts out of which the litigation arose are not in controversy since the allegations of the complaint are taken as admitted for the purpose of deciding the motion to dismiss. For an understanding of the situation, the pertinent allegations from the appellant's brief are as follows.
* * * * * *
"3. While the car was being driven by Mr. Thiel, it collided with a 1965 Ford Stationwagon which had been negligently stopped and parked on State Road #826 by Mr. Richard Charles Weed.
* * * * * *
"7. Notwithstanding the aforesaid knowledge and foresight and duty on the part of the defendant, the defendant did negligently design and manufacture the track and rail mechanism upon which the front seat of the 1970 Mercury Montego automobile rested and the locking device which secured the seat to said rail in such a manner that the front seat could not withstand the impact of a person being thrown forward from the back seat in the course of a collision. On the contrary, said mechanisms were so carelessly and negligently designed and manufactured that when the body of an occupant of the rear seat of said automobile was thrown forward and struck the back of the front seat, the front seat would not remain locked in place, but would slide forward, exposing the sharp edges of the rails upon which the seat was mounted thereby creating an extremely dangerous condition.

*42 "8. During the course of the aforesaid collision, the decedent was a passenger in the rear seat of the automobile manufactured by the defendant. As a result of the impact, the decedent was thrown forward and struck the back of the front seat of the automobile. Upon impact, not only did the locking mechanism designed to lock the front seat to the right rail (which was mounted on the floor of the automobile) fail causing the right side of the front seat to be thrown forward, but as the seat moved forward, sharp and pointed edges of the rail were exposed as well. After striking the back of the front seat, the decedent's body fell to the floor of the automobile and the decedent's head struck the exposed sharp edges of the rail, causing him to sustain injuries which ultimately caused his death."
The appellant admits that no Florida case is straightforward authority for a reversal of the trial court's holding that as a matter of law the complaint did not state a cause of action against the Ford Motor Company. Nevertheless, we think that it should be noted that as pointed out in Ford Motor Company v. Pittman, Fla.App. 1969, 227 So.2d 246:
"From the time of Judge Cardozo's enunciation on the subject in MacPherson v. Buick Motor Company, [217 N.Y. 382, 111 N.E. 1050] products liability law has evolved into a fertile field of litigation upon the judicially-inspired theory of `implied' warranties, and relaxation of the rigid evidenciary rules in proving negligence under the theory of res ipsa loquitur. Florida has been a member of the advance patrol in scanning this developing area of the law." 227 So.2d 248
Beginning with Blanton v. Cudahy Packing Company, 154 Fla. 872, 19 So.2d 313 (1944), the Florida Supreme Court has held that liability in products liability cases should rest upon right, justice and welfare of the general purchasing and consuming public. See Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299; Manheim v. Ford Motor Company, Fla. 1967, 201 So.2d 440; Noonan v. Buick Company, Fla.App. 1968, 211 So.2d 54.
Appellant's basic reliance is upon the reasoning of the court in Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968). In Larsen, supra, the plaintiff received severe bodily injuries while driving a 1963 Chevrolet Corvair with the consent of the owner. A head-on collision with the impact occurring on the left front corner of the Corvair, caused a severe rearward thrust of the steering mechanism into the plaintiff's head. Liability was asserted against General Motors, who manufactured the Corvair, on an alleged design defect in the steering assembly and the placement or attachment of the component parts of the steering assembly to the structure of the Corvair. The plaintiff did not contend that the design caused the accident, but rather that because of the design he received injuries he would not have otherwise received, or, in the alternative, that his injuries would not have been as severe. The plaintiff's complaint alleged: (1) negligence in design of the steering assembly; (2) negligent failure to warn of the alleged latent or inherently dangerous condition to the user of the steering assembly placement; and (3) breach of express and implied warranties of merchantability of the vehicle's intended use.
"General Motors [the defendant] contend[ed] it `has no duty whatsoever to design and manufacture a vehicle ... which is otherwise "safe" or "safer" to occupy during collision impacts,' and since there is no duty there can be no actionable negligence on its part to either design a safe or more safe car or to warn of any inherent or latent defects in design that might make its cars less safe than some other cars manufactured either by it or other manufacturers." 391 F.2d 497
The lower court rendered a summary judgment in favor of the defendant on the *43 basis that there was no common law duty on the manufacturer "to make a vehicle which would protect the plaintiff from injury in the event of a head-on collision" and dismissed the complaint. The appellate court reversed.
In reversing, the court began its reasoning with the well-settled principle that a manufacturer's duty of design and construction extends to the manufacturing of a product that is reasonably fit for its intended use and is free of hidden defects that could render it unsafe for such use. Therefore, the court saw as its central issue the proper interpretation of the term "intended use," and in this regard it recognized the fact that automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. The court went on to find that such intended use cannot be carried out without encountering, to differing degrees, the statistically-proven hazard of various types of injury-producing impacts, and it further determined that the manufacturer must take into consideration the environment in which his product is to be used. Finally, in granting relief to the plaintiff, the everyday realities of life as manifested by statistics, surveys, and other data reflecting the frequency and certainty of fatal and injury-producing accidents was acknowledged by the court, which held:
* * * * * *
"We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable." 391 F.2d 502
* * * * * *
For an analysis of the states following Larsen, see, Frericks v. General Motors Corporation, 1974, 20 Md. App. 518, 317 A.2d 494.
The appellee's basic reliance is upon the reasoning in another Federal Court discussion, Evans v. General Motors Corp., 359 F.2d 822 (7th Cir.1966). There, the personal representative of the decedent's estate sought recovery on the ground that the decedent's death was caused by the alleged negligent design of an automobile manufactured by General Motors.
The complaint charged negligence in design, breach of implied warranty, and strict liability of the manufacturer for a defective and dangerous automobile. It seems that another automobile struck the left side of the General Motors product and caused it to collapse in upon the decedent. It was plaintiff's contention that the station wagon was negligently designed with an "X" frame which did not have side frame rails to protect the driver in impact collisions.
Similar to the case at bar, defendant took the position that the alleged manufacturing defect was not the proximate cause of the accident itself. However, it was urged by the plaintiff that the collision was a foreseeable event, and therefore, the failure to have side frame rails was the proximate cause of the fatal injuries to the decedent when the automobile was involved in a broadside collision.
The issue of law considered by the Seventh Circuit was the nature of the duty owed by an automobile manufacturer to the user of its product. In making its determination, the court recognized defendant's argument that:
"... it had a duty to design its automobile to be reasonably fit for the purpose for which it was made, without hiding defects which would make it dangerous to persons so using it." 359 F.2d 824
However, after reviewing the plaintiff's and the defendant's positions, the appellate *44 court clearly held that the intended purpose of a vehicle
"does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons." 359 F.2d 825
The court further stated,
"Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law." 359 F.2d 824
The Evans court held that the manufacturer had no liability where the plaintiff's injury was caused by an alleged defect which caused injury only after an intervening collision. This reasoning holds that a manufacturer may foresee the possibility of collisions but that its responsibility does not extend to the construction of an automobile in which it would be safe to collide. Several state courts have followed this line of reasoning. For an analysis of the states following Evans, see Frericks v. General Motors Corporation, 1974, 20 Md. App. 518, 317 A.2d 494.
We think that the reasoning in Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968), discussed above, is the better reasoning and more in keeping with the law of this State. See Matthews v. Lawnlite, Fla. 1956, 88 So.2d 299; Manheim v. Ford Motor Company, Fla. 1967, 201 So.2d 440; Mozer v. Semenza, Fla.App. 1965, 177 So.2d 880.
We hold, therefore, that an automobile manufacturer may be liable in negligence and for breach of an implied warranty where a defect in manufacture causes injury to a user as a result of a collision even though the defect was not a cause of the collision. The question of proximate cause is a question for the jury. Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911 (1938). Accordingly, the order dismissing appellant's complaint against the appellee, Ford Motor Company, is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.
Reversed and remanded.