William H. SMITH, Plaintiff-Appellant,

v.

FIAT–ROOSEVELT MOTORS, INC., a New Jersey Corporation, Defendant-Appellee.

No. 75–4185.

United States Court of Appeals, Fifth Circuit.

July 27, 1977.

Anthony I. Provitola, DeLand, Fla., for plaintiff-appellant.

Robert C. Gobelman, Jack W. Shaw, Jr., Jacksonville, Fla., for defendant-appellee.

Before WISDOM and GEE, Circuit Judges, and BOOTLE,[*] District Judge.

GEE, Circuit Judge:

Our recent opinion in *West v. Caterpillar Tractor Co., Inc.*[1] notes that the opinion of the Florida Supreme Court in that case,[2] an opinion which obliged us directly by settling the major questions of Florida law and policy we had there certified, also "contains other reasoning and subsidiary indications which will be of interest to Florida practitioners . . . ." *West v. Caterpillar Tractor Co., Inc.*, 547 F.2d 885, 887 (5th Cir. 1977). It falls out today that these are of interest to us as well, for they permit us to dispose of this appeal without again imposing on the Florida Court and with tolerable assurance that we do so in accordance with Florida law.

This appeal is one from a summary judgment for defendant Fiat-Roosevelt Motors, Inc., the sole importer-distributor of Fiat automobiles for the United States at the relevant times. Plaintiff Smith, the employee of a retail automobile dealer, was driving a Fiat automobile, bought from defendant by his employer for resale, to have

it serviced when it was rear-ended while stopped at an intersection. At the impact, the driver's seat-back "reclined" or broke backward, he testified. He brought this suit claiming back injury. At the time of hearing on summary judgment, Smith's theory of liability was breach of an implied warranty that the Fiat was "reasonably fit for its intended use as a passenger automobile equipped with crashworthy seat backs and devices securing the same . . .." He suffered summary judgment on two grounds. The first was that while Florida might, the district court concluded, imply a "crashworthiness" warranty against a manufacturer of automobiles, it would not do so against a mere distributor such as defendant. The second was that since plaintiff's physician, in deposition testimony introduced at the hearing, admitted he could not apportion plaintiff's injuries between those caused by the initial rear-ending impact and those caused by the seat's reclining, plaintiff lacked competent evidence linking the alleged defect and his damages. Unable to agree with either conclusion, we reverse.

As for the physician's inability to apportion plaintiff's claimed injury between clauses, it suffices to say that under Florida substantive law such a failure by a plaintiff does not ordinarily result in defendants' judgments. In Florida, where an injury is indivisible and apportionment is impossible, plaintiff may recover his entire damages from either tortfeasor. *De la Concha v. Pinero*, 104 So.2d 25 (Fla.1958); *Washewich v. Lefave*, 248 So.2d 670 (Fla.App.1971) (plaintiff thrown from car in collision and then run over by defendant; duty on plaintiff to segregate damages by cause, but if impossible to do so damages for entire injury recoverable from defendant).[3] Defend-

---

[*] Senior District Judge of the Middle District of Georgia sitting by designation.

1. 547 F.2d 885 (5th Cir. 1977).

2. 336 So.2d 80 (1976).

3. Florida Standard Jury Instruction 5.2b likewise reflects that concurring cause is the substantive law of Florida:

In order to be regarded as a legal cause of [loss] [injury] [or] [damage], the defect need

not be the only cause. A defect may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing such [loss] [injury] [or] [damage]. In the matter of the use by the trial courts of the *Standard Jury Instructions*, Case No. 46,366–A, Opinion filed July 24, 1975 (Fla. 1975).

ant's judgment on this ground may not be sustained.

Florida law is not quite so clear on the other and major ground upon which the judgment rests and was even less so when the district court made its ruling. But since then, we conclude, that law has marched on sufficiently for us to make a confident prediction of its course and destination. In replying to our certified questions in *West, supra*, the Florida Supreme Court made plain that implied warranty under the Uniform Commercial Code obtains in Florida as a theory of recovery in such actions as this. Quoting with approval from an Arizona case, and adding observations of its own, that court wrote:

> In *Caruth v. Mariani*, 11 Ariz.App. 188, 463 P.2d 83, 87 (1970), a products liability suit based upon strict liability, the following appears:
>
> "Finally, defendants contend that our decision in this case should be governed by those portions of the Uniform Commercial Code . . . .
>
> "The U.C.C. parallels the doctrine of strict tort liability but the two should not be confused with each other. They are 'different breeds of cat.' Strict tort liability is based on public policy. Express and implied warranties under the U.C.C. are based on contract. The U.C.C. still talks about disclaimers and notice. These are not tort concepts."

*   *   *   *   *   *

Strict liability does not make the manufacturer or seller an insurer. Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.

*   *   *   *   *   *

The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. If a user is injured by a defective product, but the circumstances do not create a contractual relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.

*   *   *   *   *   *

To summarize, we recognize that in the present day marketing mileu treatment of the manufacturers' liability to ultimate purchasers or consumers in terms of implied warranty is simply using a convenient legal device to accomplish some recourse for an injured person.

336 So.2d at 88–92, *passim*.

■ From these expressions it is plain that implied warranty under the U.C.C.[4] runs in Florida as a theory of recovery against manufacturers. If so, it runs against merchants as well under the clear terms of section 672.2–314, the Florida enactment of the U.C.C.[5]

■ It remains only to consider whether Florida accepts the notion that implied warranty extends to embrace *some* concept of "crashworthiness." That it does is made plain, we think, by the recent Florida case of *Evancho v. Thiel*, 297 So.2d 40 (Fla.App. 1974), affirmed in effect by the Supreme Court of Florida at 327 So.2d 201 (on certified question).

As we noted in *Wooten v. White Trucks*, 514 F.2d 634 (5th Cir. 1975), there is a division of authority regarding manufacturers' and sellers' responsibility to design against the so-called "second collision":

> It seems ironic that the parameters of decision on this diversity-bound theory of liability should be set by federal cases. In *Evans*,[3] the Seventh Circuit rejected the "crashworthiness" concept entirely on reasoning that, though automobile collisions are foreseeable, they are not within the intended purposes of the machine and

---

4. And perhaps under the common law as well. See *West*, 336 So.2d at 87–88.

5. We note as well that the Florida Court follows the Restatement in holding a "seller" to

strict liability. In view of this, surely it would be anomalous to exempt him from implied warranty.

the manufacturer's duty does not therefore extend to designing against them. The court observed that manufacturers know as well that their cars will sometimes be driven into water, but are not thereby obliged—on pain of liability for damages—to provide flotation gear. *Larsen*,[4] on the other hand, explicitly rejects the "intended use" reasoning of *Evans*, observing that since makers know a high percentage of automobiles produced are at some time or another involved in serious accidents, designing for as much safety as is reasonably attainable under these statistically-likely circumstances (and under the given state of the art) is among the manufacturer's duties. Unwilling to concede an inch to the *Evans* reasoning, the *Larsen* court went so far as to meet its illustrative example head-on, observing that the manufacturer's duty may indeed require consideration of the cars' flotation capability. *Dreisonstok*[5] represents the Fourth Circuit's attempt to chart a course between *Evans'* perhaps somewhat-unworldly view and the *Larsen*-induced spectre of one approved automobile design resembling nothing so much as a $100,000 amphibious tank.

[3] *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966) (an *Erie*-guess at Indiana law).

[4] *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968) (Michigan diversity, but decided without apparent reference to Michigan law—if any—on this point).

[5] *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066 (4th Cir. 1974) (*Erie*-guess at Virginia law).

514 F.2d at 636.

Acceptance of *Larsen*, then, is recognition of a duty in the manufacturer to design against defects which cause unreasonable risk of foreseeable injury, though not the initial collision. *Evancho* was a "second collision" case in which a passenger died by striking his head on jagged surfaces exposed when the front seat of an automobile was thrown forward as the result of a collision. And in its opinion there, the Florida Supreme Court discussed both *Evans* and *Larsen*, noted their progeny, quoted at length from *Larsen*, and concluded:

> We adopt the *Larsen* view, holding that the manufacturer must use reasonable care in design and manufacturer of its product to eliminate unreasonable risk of foreseeable injury.

327 So.2d at 204.

■ *Evancho* brings Florida in as one of the jurisdictions which recognizes some degree of duty in this regard, and one to which the implied warranty extends. The district court sought to distinguish *Evancho*, a suit against a manufacturer, from this suit against a mere merchandiser of the product on the ground that a vendor does not have the same opportunity as a manufacturer to guard against defects in the product. The court believed, therefore, that even were such liabilities properly visited on the manufacturer, it would be unfair to impose them on the vendor. And surely the court was partly correct: as a matter of simple and particular fairness, the imposition of strict liability or liability in implied warranty on a vendor is less fair than imposing it on the maker, for the vendor will usually be less at fault.

These liability doctrines, however, do not much—if at all—rest on particular fault, rather on a general risk-shifting policy.[6] Rightly or wrongly, Florida (with much other) law, in a policy choice quite beyond our competence to question, has simply determined that, all other things being equal and

**6.** Indeed, the Florida Supreme Court early advised us, in *Green v. American Tobacco Co.*, 154 So.2d 169 (Fla.1963), that an action for implied warranty lies in Florida even in circumstances where fault could scarcely have been present at all, the carcinogenic effect of cigarettes having been unknown to anyone at the times there relevant:

> Upon the critical point, our decisions conclusively establish the principle that a manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty, and the question certified must therefore be answered in the affirmative.

154 So.2d at 170–71. *See also McLeod v. W. S. Merrell Co.*, 174 So.2d 736 (Fla.1965).

particular defenses not germane to this discussion being absent,[7] the risk that goods sold are not reasonably fit is to fall, not on the consumer, but on those who make and sell them. Remedies looking up the line of distribution and fabrication afford the vendor such recourse as he has and, to the extent they are effective, ameliorate the aspect of unfairness noted by the district court: And unfair or not, the handing down of *West* and the affirmance of *Evancho*, both by the Florida Supreme Court and both since the district court's decision, leave little doubt that under Florida law the merchant-vendor of an automobile impliedly warrants its "crashworthiness" in some degree. And if he does so in *any* degree, the summary judgment may not be sustained on this ground either.

REVERSED and REMANDED.

---

7. Such as the consumer's own negligence. *See West v. Caterpillar Tractor Co., Inc.*, 336 So.2d at 91–92.