Linda McLEOD, Plaintiff-Appellee,

v.

AMERICAN MOTORS CORPORATION, and American Motors Sales Corporation, Defendants-Appellants.

No. 82–3007.

United States Court of Appeals, Eleventh Circuit.

Jan. 23, 1984.

Rehearing and Rehearing En Banc Denied March 19, 1984.

Barbara J. Paulson, Tampa, Fla., Edward T. O'Donnell, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for defendants-appellants.

Joel R. Tew, Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

This appeal arises from a diversity action instituted by Linda McLeod against American Motors Corporation and American Motors Sales Corporation (AMC). In essence, McLeod alleged that the negligent design and subsequent failure of her AMC Pacer's front seat track assembly caused her to sustain serious injuries in an auto accident. The jury found for McLeod and awarded her $250,000 in damages. AMC now appeals from the district court's order denying its motions for judgment notwithstanding the verdict and new trial. Agreeing with the district court's application of Florida law, we affirm.

## I. FACTS

Early one morning, Linda McLeod was driving an AMC Pacer along a rural Florida highway as her passenger slept in the reclined passenger seat. Her passenger's dog, a 120-pound Great Dane, sat in the rear of the Pacer behind the driver's seat. Suddenly, a drunken driver swerved across the median and headed toward the Pacer. McLeod slammed on her brakes but was unable to avoid a head-on collision.[1]

At trial, McLeod alleged that a defective bolt in the front seat track of her Pacer severed prior to or at the moment of impact. McLeod also claimed that the seat track assembly was defectively designed and manufactured. Her theory was that, as a result of these defects, the seat separated from its track when she slammed on her brakes to avoid the other car and the Great Dane crashed into the rear of her seat. As a result of the seat's failure, she was propelled forward into the steering column and windshield.

AMC defended on the grounds that the drunken driver was responsible for all of McLeod's injuries. AMC also argued that McLeod would have suffered identical injuries regardless of whether the seat broke from its track upon impact because she was not wearing her seat belt. Significantly, AMC made no effort to apportion damages between those which could have been caused by the alleged defective seat and those which were probably caused by the negligence of the drunken driver. Rather, AMC denied any and all liability to McLeod.

As noted earlier, the jury found for McLeod and awarded her $250,000. By its answers to the verdict, the jury found that the Pacer's seat was defective and that the defect was a concurring cause of McLeod's injuries.[2] The district court entered judgment on the verdict and denied AMC's motion for judgment n.o.v. and alternative motion for a new trial. AMC now appeals.

## II. DISCUSSION

Before addressing AMC's arguments on the merits, we emphasize that this is a diversity case controlled by Florida law. Our task does not entail an independent assessment of the merit of AMC's arguments under the law of this or any other circuit. For under *Erie,* "when a federal court is adjudicating rights created by the state, based solely on diversity of citizenship, the federal court, in effect, becomes just another state court for the purposes of determining the outcome of the case." *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals,* 695 F.2d 1314, 1319 (11th Cir.1983) (footnote omitted). In this role, we are bound by the writings of the Florida courts as they appear on the slate before us. We thus proceed to analyze AMC's contentions under Florida law.

### A. *Defect and Causation*

AMC initially argues that, for various reasons, McLeod's evidence was insufficient to support the jury's findings that the seat track assembly was defective and that such defect proximately caused McLeod's injuries. Although it also contends that expert witnesses for McLeod were improperly allowed to base their testimony upon factually unsupported premises, AMC's primary

---

1. The drunken driver died. McLeod subsequently settled with his insurance carrier for $10,000 and the trial judge reduced McLeod's award by that amount.

2. A copy of the verdict appears as the Appendix.

argument is that McLeod's failure to produce opinion testimony from any expert that the alleged defect caused her injuries required the trial court to direct a verdict in its favor.

While it is true that the district court did not permit McLeod's experts to opine that the defective seat track assembly was the cause of her injuries, the absence of such testimony is not fatal to McLeod's case. Under Florida law, the question of proximate cause, being factual in nature, must be submitted to the jury. *Evancho v. Thiel*, 297 So.2d 40 (Fla.App.1974), aff'd, 327 So.2d 201 (Fla.1976); *Noonan v. Buick Co.*, 211 So.2d 54 (Fla.App.1968). McLeod, of course, was obliged to present evidence from which the jury could reasonably conclude that the assembly was defective and that the defect was a proximate cause of her injuries. This she did.

McLeod's experts testified that the seat track was separated from the floor pan of the Pacer, that the seat back was twisted, and that a bolt fragment was lodged in the broken seat track. One expert, after opining that the bolt had failed due to fatigue and/or improper fastening, explained that the seat track separation probably resulted from the forces exerted by the Great Dane's striking the back of McLeod's seat. Another expert testified that, given the bolt failure, alternative designs would have better prevented separation of the seat track assembly. Clearly, ample evidence supported the jury's finding of defect.

In a similar fashion, McLeod's evidence sufficed to establish that the defective seat was a proximate cause of her injuries. Photographs taken immediately after the accident illustrated McLeod's theory that the seat, having broken from its track, pushed her forward and upward into the steering column and windshield. In addition, the first police officer to arrive at the site of the accident testified that he found McLeod pinned against the steering column and windshield. Expert witness testimony also supported McLeod's theory that the force of the 120-pound Great Dane in conjunction with the force of the 50-pound seat caused her to be thrown forward and upward into the front of the Pacer. From this evidence, together with the testimony concerning the defective seat, the jury could reasonably conclude that AMC's negligence was a proximate cause of McLeod's injuries.

### B. Apportionment

AMC's principal argument on appeal relates to the verdict form used by the district court. Quite correctly, AMC points out that the verdict form directed the jury not to apportion damages between those attributable to the defective seat and those attributable to the primary collision, which were not caused by AMC's negligence, if the jury found AMC's negligence to be a concurring cause of McLeod's injuries. Appendix, *infra*. Because under this verdict form the jury could award McLeod compensation for injuries resulting from the primary collision, in addition to those stemming from the seat track separation, AMC argues that it is entitled to a new trial.

We recognize that some jurisdictions would agree with AMC and hold that McLeod's failure to apportion damages and the district court's refusal to submit the apportionment issue to the jury constitute reversible error. *See, e.g., Huddell v. Levin*, 537 F.2d 726, 737–38 (3d Cir.1976); *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 249–51 (2d Cir.1981). These courts hold that the plaintiff in a "second collision" case bears the burden to establish with specificity what injuries resulted from the alleged defect. Conversely, other jurisdictions follow the view expressed by the Second Restatement of Torts [3] and hold

---

**3.** Sections 433 A and B of the Restatement (Second) of Torts (1965) provide:

**§ 433 A. Apportionment of Harm to Causes**
(1) Damages for harm are to be apportioned among two or more causes where
  (a) there are distinct harms, or

  (b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

that the defendant in this type of case bears the burden to apportion damages. *See, e.g., Mitchell v. Volkswagenwerk A.G.,* 669 F.2d 1199, 1206 (8th Cir.1982); *Fox v. Ford Motor Co.,* 575 F.2d 774, 786–88 (10th Cir.1978). In the latter jurisdictions, plaintiff must only show that the alleged defect proximately caused her injuries. She is not required to separate and apportion damages between the tortfeasors.

While we find this difference of opinion intriguing, we remain mindful of our duty in this diversity matter not to determine which view represents sounder reasoning, but to decide which view represents the law of Florida. Although we have discovered no Florida precedent directly on point, we conclude that, under the circumstances of this case, the district court did not err when it directed the jury to hold AMC fully liable for McLeod's injuries if it found AMC's negligence to be a "concurring cause" of those injuries.

1. *Concurrent versus successive causation.*

■ The Florida cases distinguish between *concurrent* and *successive* causation. The typical *concurrent* causation case involves two defendants whose acts occur at or about the same time and together produce plaintiff's injury. In this situation, Florida law clearly makes each of the defendants jointly and severally liable for the full amount of plaintiff's damages. *De La Concha v. Pinero,* 104 So.2d 25, 28 (Fla. 1958). The typical *successive* causation case, on the other hand, involves two or more defendants whose acts occur at distinct times and together produce plaintiff's total injuries. Florida law apparently holds that in successive injury cases the jury should be allowed to apportion damages between the defendants; however, if damages are not reasonably apportionable, plaintiff may recover the full amount from either of the two defendants. *Washewich v. LaFave,* 248 So.2d 670, 672 (Fla.App. 1971); *Wise v. Carter,* 119 So.2d 40 (Fla. App.1960).

2. *This is a concurrent causation case.*

■ The jury found that "the defect or negligence of defendants [was] a concurring cause" of McLeod's injury. McLeod's evidence was sufficient to show that AMC's negligent act occurred at or about the same time the negligence of the other driver had its effect, and that AMC's negligent act substantially contributed to producing McLeod's injuries. In fact, McLeod's experts testified that the seat might well have broken loose and forced her into the steering column before the moment of impact. AMC's experts were unable to rule out this theory. The trial court thus properly instructed the jury on concurrent causation. *See De La Concha v. Pinero,* 104 So.2d 25, 28 (Fla.1958); *Little v. Miller,* 311 So.2d 116, 118 (Fla.App.1975). Therefore, we must determine whether Florida courts, in concurrent causation cases, place on the defendant the burden to apportion damages. If so, the jury verdict must stand because AMC made no attempt to apportion damages. If not, *i.e.,* if McLeod had the burden to separate the damages she suffered as a result of the seat track failure from those she suffered as a result of the primary collision, then AMC might well have prevailed.

The Florida state courts have not squarely addressed this issue. However, the Fifth Circuit applied Florida law in a case which is closely analogous to the one before this court. In *Smith v. Fiat-Roosevelt Motors, Inc.,* 556 F.2d 728 (5th Cir.1977), plaintiff's car was rear-ended while stopped at an intersection. At the moment of impact, the

**§ 433 B. Burden of Proof**
(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff. (2) *Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportion-* ment among them, the burden of proof as to the apportionment is upon each such actor. (3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm. (emphasis added)

driver's seat-back broke, causing him to sustain back injury. Plaintiff's physician, in deposition testimony, admitted that he could not apportion plaintiff's injuries between those caused by the impact of the rear-ending collision and those caused by the seat's failure. The district court granted defendant's motion for summary judgment on the ground that plaintiff could not apportion damages. In reversing, the Fifth Circuit reasoned as follows:

> As for the physician's inability to apportion plaintiff's claimed injury between clauses [sic], it suffices to say that under Florida substantive law such a failure by a plaintiff does not ordinarily result in defendants' judgments. In Florida, where an injury is indivisible and apportionment is impossible, plaintiff may recover his entire damages from either tortfeasor. *De La Concha v. Pinero,* 104 So.2d 25 (Fla.1958); *Washewich v. LaFave,* 248 So.2d 670 (Fla.App.1971) (plaintiff thrown from car in collision and then run over by defendant; duty on plaintiff to segregate damages by cause, but if impossible to do so damages for entire injury recoverable from defendants). Defendant's judgment on this ground may not be sustained.

*Id.* at 729–30 (footnote omitted). As a practical matter, plaintiff's failure to produce any evidence that her injuries are indivisible (as is the case here) places the defendant in the same position as it would have been in had plaintiff produced evidence that her injuries could not be apportioned (as was the case in *Smith*). In ei-

ther case, Florida law provides that plaintiff may recover her entire damages from either tortfeasor.

■ Moreover, Florida appellate courts consistently place on the defendant the risk of nonpersuasion on the issue of apportionment. The Florida Supreme Court long ago noted, "The rule is well settled that if two or more wrongdoers negligently contribute to the personal injury of another by [their] several acts, *which operate concurrently,* so that in effect the damages suffered are rendered inseparable, they are jointly and severally liable." *Feinstone v. Allison Hospital,* 106 Fla. 302, 143 So. 251, 252 (1932), *quoted in Randle-Eastern Ambulance Service, Inc. v. Millens,* 294 So.2d 38, 39 (Fla. App.1974) (emphasis in original). The Fifth Circuit's decision in *Smith* is therefore consistent with Florida precedent.

■ AMC's theory at trial was that the negligence of the second driver proximately caused 100% of McLeod's injuries. Thus, AMC produced no evidence that McLeod's injuries were divisible. Since AMC bore the burden to prove apportionment, we hold that the trial court correctly took from the jury the apportionment issue.[4]

### C. *AMC's Seat Belt Defense*

■ Although the rule in Florida is that evidence of plaintiff's failure to wear an available seat belt "is inadmissible both as a defense on liability and as a limitation on damages . . .," *Lafferty v. Allstate Insurance Co.,* 425 So.2d 1147, 1148 (Fla.App.

4. We note that, under the verdict form used by the district court, had the jury found AMC's negligent act *not* to be a concurrent cause of McLeod's injuries, then the apportionment issue would have gone to the jury. Although we express no opinion on the issue, this procedure appears to be correct under Florida law. By its answers to Interrogatories 1(a) and (b), the jury found that AMC's negligence was "a legal cause" of McLeod's injury. Question 2(a) then sought to determine whether, under the jury's view, AMC's negligent act was a concurring or a successive cause of McLeod's injury. Had the jury answered question 2(a) "no," *i.e.,* had the jury found AMC's negligence *not* concurrent, then the rules of *successive causation* would govern the award of damages.

Florida principles of successive causation apparently require plaintiff to separate the injuries attributable to each of the defendants. *See Washewich v. LaFave,* 248 So.2d 670 (Fla.App. 1971). In a successive causation case, moreover, any evidence forming a reasonable basis from which the jury can segregate plaintiff's damages will present "a factual determination for the jury as to whether or not apportionment was possible." *Schwab v. Tooley,* 345 So.2d 747, 749 (Fla.App.1977). Because this case involves concurrent causation, we express no opinion as to whether Florida law would permit the jury in a successive causation case to apportion damages where neither party presented any evidence on the issue.

1982), McLeod agreed to submit to the jury the issue of whether her failure to wear a seat belt was negligence. In addition, McLeod's expert witnesses testified that had she been wearing a seat belt, McLeod would have received more serious injuries in the accident. Thus, the jury could reasonably conclude that McLeod's failure to use her seat belt was not negligence. Any argument by AMC that McLeod's failure to wear a seat belt constitutes negligence as a matter of law is more appropriately addressed in the Florida Supreme Court or State Legislature.

In conclusion, therefore, we hold that McLeod presented sufficient evidence from which a jury could reasonably find her Pacer's seat track assembly to be defective and a proximate cause of her injuries. We also hold that the district court properly directed the jury not to apportion damages if it found AMC's negligence to be a "concurring cause" of McLeod's injuries. Finally, we find ample evidence to support the jury's finding that McLeod's failure to wear her seat belt was not negligence.

Accordingly, the judgment of the district court is

AFFIRMED.

### APPENDIX

### VERDICT

WE, THE JURY, return the following verdict:

1(a) Did Defendants, AMERICAN MOTORS CORPORATION or AMERICAN MOTORS SALES CORPORATION place the automobile seat on the market with a defect which was a legal cause of damage to LINDA McLEOD?

YES ✓

NO ____

(If you answered question 1(a) YES, proceed to 1(b). If you answered 1(a) NO, then your Verdict is for the Defendants and you should not proceed further except to date and sign this Verdict and return it to the courtroom.)

1(b) Was there negligence on the part of AMERICAN MOTORS CORPORATION or AMERICAN MOTORS SALES CORPORATION which was a legal cause of damage to LINDA McLEOD?

YES ✓

NO ____

(If all your answers so far are NO, then your Verdict is for the Defendants, and you should not proceed further except to date and sign this Verdict form and return it to the courtroom. If your answer to any question so far is YES, please proceed.)

2(a) Was the defect or negligence of Defendants a concurring cause of any injury or damage sustained by Plaintiff as a result of the collision?

YES ✓

NO ____

(If your answer to 2(a) is YES, do not answer 2(b) or 2(c) but proceed to question No. 3. If your answer to 2(a) is NO, proceed to question 2(b).).

2(b) Can you distinguish the amount of damage sustained by Plaintiff as a result of the Defendants' negligence or defect and the amount of damage sustained by Plaintiff as a result of the collision?

YES ____

NO ____

(If your answer to 2(b) is YES, proceed to question 2(c). If your answer to 2(b) is NO, do not answer 2(c) but proceed to question No. 3.)

2(c) What do you find to be the amount of damage sustained by Plaintiff as a result of Defendants' negligence or defect?

$_____.

3. What do you find to be the total amount of damage sustained by Plaintiff as a result of the collision?

$ 250,000 .

4. Was there negligence on the part of LINDA McLEOD for her failure to use the seat belt and shoulder harness which was provided in the 1976 AMC Pacer automobile and which was a legal cause of her injury or damage?

YES ____

NO ✓

(If your answer to question No. 4 is YES, go on to answer question No. 5. If your answer to question No. 4 is NO, date and sign the verdict form and return it to the courtroom.)

5. State the percentage of any responsibility for Plaintiff's injury or damage that you charge to

Linda McLeod _____%

American Motors Corporation or American Motors Sales Corporation _____%

Total of the above must equal 100%.